It's 13-5703 USA v. Corey Lanier. Oral argument, 15 minutes per side. Mr. Shadd, for the appellant. Good morning, Your Honors. May it please the Court, Counsel. Here this morning representing Corey Lanier, and I'd like to reserve three minutes for rebuttal, if I may. Your beard's getting longer, Mr. Shadd. It's getting longer, but a little bit more this way, because it's getting white, and I don't want everybody to see all the white. Well, you can go for the Robert E. Lee look. There we go. I've raised a lot of issues in the brief in this case, but I'd really like to focus on one this morning. And that is the issue that the government took one conspiracy of a finite time period and divided it into three conspiracies for really no other reason. But the upshot of it was that we went from one 924C count to three 924C counts, and that increased the sentence effectively 50 years in this case. And I'd like the Court to note that if I'm right on this argument that this is one conspiracy and not three, this defendant, assuming that the Court doesn't buy any of my other arguments, this defendant will still do 27 years incarceration, even if I'm right on this. He's looking at 90-something now? He's looking at 78, I believe, right now is what he has. But the two 924Cs of 25 each consecutive will fall off, but he'll still have a seven-year 924C plus the 20 years that he received on the underlying Hobbs Act conspiracy in this case. And I think it's clear that if you look at the Sinitoe factors that this is one conspiracy. It's hard to press any of those factors to get to where this is a distinct conspiracy, the three distinct conspiracies in this case. Can you remind just real quick us what those factors are? Sure. We have time as a factor, co-conspirators are factors, overt acts, the statute which is alleged, and then the location of the conspiracy. Those are the five factors. So let's start with what the easy one is, which is the statute that's alleged in the indictment. Well, it's a Hobbs Act conspiracy. All three counts are exactly the same. So that factors in our favor immediately. Before you run through the factors, if I could interrupt. Yes. Did the original indictment charge one conspiracy and the superseding changed it to three? The complaint charged one, the original indictment I want to say charged two, and then the superseding indictment converted it to three. Just cranking it up. Apparently so, apparently so. And if you take a look at the complaint, which is record number three, it actually goes through all three robberies, but it only says that it's one conspiracy in the original complaint in this case. So the statutes are exactly the same. The time frame, according to Shannon Wilson, the first offense, which is the Markeith Davis robbery, took place in the summer of 2009. Now, the indictment alleges, I believe, April through September of 2009 or something like that, but it's September of 2009. The second one occurred September the 8th, 2009, and the third one, where Mr. Wilson was caught, occurred in November of 2009. So in your view, it's a two-month time frame? Even if you accept that it's a seven- or eight-month time frame, it's still a very – if you look at the law of conspiracy – I'm just trying to get the factual. I would argue that it's no more than four or five months. When is the first robbery? It's in the summer of 2009. So if you want to say the summer is May, and we take it to November. It's still spring. It's still a – yeah, there's no snow on the ground in Nashville, I don't think. Yeah, you can speak for Nashville on that. So then we look at location. Every one of these robberies occurs in the Nashville area, in the Middle District of Tennessee. It's not part of the record, but if the court wants to take judicial notice, you can look on Google Maps. Approximately a 20-mile radius from each other. But more importantly than that, on that factor, the government alleged that it's a conspiracy. So when you take a look at it, it's not just that a Hobbs Act violation occurred at this location, that location, this location. It's that the agreement occurred at a certain location. And the agreement occurred when Mr. Wilson and or my client, Mr. Lanier, would call each other on the phone and say, hey, I've got one for you. And so that agreement occurs basically in the same location on one phone to another phone, because that's the essence of the charge here. Are Lanier and Wilson charged in all three of them? Because I thought at least one of them Wilson didn't or one of them didn't participate in. Well, when you get to the final superseding indictment, it's actually mostly just Lanier charged at the end. I think there's a Mr. Pitts that's charged. If you look at Lanier, there's a shifting cast of characters. Some of them overlap. Some of them don't. Absolutely. But Mr. Wilson's involved in all three. Shannon Wilson's involved in all three, and he's the progenitor in all three, because the way this works is that either Mr. Wilson knows somebody that he can't rob, and therefore he asks Mr. Lanier to rob them for him, or Mr. Lanier might know somebody that he gives a tip to Mr. Wilson for and so that he can rob him. Are we working with, I'm sorry, just real quick, the superseding indictment? Is that what we're working with here? Yes. Which counts? So it's the Hobbs Act conspiracies are 1, 3, and 5. 1, 3, 5. Okay. Yes. I'll leave it to Judge Boggs. Then the guys, a different cast of characters, get together and agree to do the robbery. Well, no, it depends. I mean in the sense that at least they've got to get the guy and say, we're going to be at this place at this time. They're not fortuitous people walking by. But that brings me to the fact that it's charged as a conspiracy in this case. Keep in mind that for a Hobbs Act conspiracy, there does not need to be any overt act whatsoever. And that was part of the jury instruction in this case. It's all about the agreement. And the agreement occurs when Mr. Wilson and Mr. Lanier say, hey, if I got one, I'll let you know. If you got one, you let me know. And then as this progresses, they come up with different ones to rob. It's an ongoing agreement for at least a five-month period. And had we been dealing with, and I think the government's brief attempts to do this, they try to parcel it out and say, okay, well, this Hobbs Act robbery occurred here and this Hobbs Act robbery occurred here, and so therefore they couldn't have been the same. They charged them all as conspiracy. And conspiracy is merely the agreement to commit the robberies. So does this case, in your view, turn on the question whether on the one hand he had a more general agreement? What was the other guy's name? Mr. Shannon Wilson. With Wilson? Yes. With Wilson that any time we have an opportunity, we see an easy lick, we're going to do that robbery. And whoever doesn't know the victim will lead it. Or alternatively, it's just ad hoc. Wilson calls one day, hey, I got an opportunity. Are you interested? Yeah. Okay, go ahead and do it. Two months later, hey, I just heard this. Do you want to do it? Yeah. That would be three separate agreements, right? I would disagree with that because then I want to make it clear. If they had no intention of an ongoing thing but something comes, criminals are opportunistic. Leave your garage open all night, that sort of thing, rather than they're going to break the garage door down. What if this was just opportunistic? They weren't thinking in these global terms. As to your second scenario, I think I have two answers to that. The first one is the United States v. Smith case that I cited to in my brief. And that's the one where there were the bank extortions that went on for like a year and a half period. And in that case, this court said that even at the time, for that to be one ongoing conspiracy, because it was the converse argument by defense in that case is that they charged it in one but it was really five conspiracies. That was the argument in that case. And so in that case, they didn't have, at the time they completed the first bank extortion, they didn't necessarily have the next victim lined up. But they knew that there was just this scheme that they were all in an agreement that somewhere down the line there might be another victim, and therefore if there's another victim, then we'll do all the details to set that next one up. And in that case, just as Judge Boggs said, there were different actors involved in those bank extortion schemes, but there were still the two main guys, and even in one of those bank extortion schemes in the Smith case, one of the main guys wasn't even involved, but it was still held to be one overall conspiracy because it was just this ongoing agreement, and it doesn't have to be an agreement that's in a written contract. We understand that these criminal conspiracies are, by their very nature, kind of nebulous, kind of as it occurs, as opportunity knocks, therefore we'll do this, right? Counsel, this would be potentially a better argument if it were presented to the district court and a lot of these facts we're speculating on could have come out, but this is on plain error review, right? Absolutely. And I thought I raised ten issues in my brief, and I led with a plain error issue as my first issue, which is fairly unusual. But the evidence, the actual evidence in this case is so strong that's contained in the record that I think this court has no other basis but to find that it's one conspiracy in this case. Shannon Wilson testified in this case. He testified that he was involved in all three of the robberies. Now, he wasn't physically at all three, but he was involved. Starting with Markeith Davis, he was the one that provided Mr. Lanier with the information, and he expected to get money out of that robbery. Judge Blackett says 1634 is where his testimony is on that issue. He was then physically involved in the next two robberies. And so Keewan, I can't remember his last name right now, he's actually also part of the crew in two of the three robberies. So you have overlap there as well. And again, we have a finite period. So then you have to look at that. Go ahead. That doesn't go to the baking of the agreement in the sense that the government didn't put on evidence, for example, that what we're speculating about, that they got together and said, you know, we're going to look for targets and we're going to do them, as opposed to a bunch of people get together in the park and some of them are the same, some of them are different, and say, I've got a good deal today and another one a month later and another one a month later. But when we're looking at conspiracy like a drug trafficking conspiracy, that's the precise thing that we always look at and say, well, it was an ongoing agreement. Certainly there wasn't an agreement that I will sell you two ounces every week and you're going to pay this amount every week. But when somebody calls up and says, hey, you got anything for me today? And he says, I got four ounces. And then, you know, three weeks later. In those cases, they're very frequently litigated and sometimes they win, sometimes they lose as to how many conspiracies there are. Sure. Sometimes the defense wants there to be three and sometimes the government wants there to be three. Yes, absolutely. In the cases that I found, it's very unusual that I'm arguing this side of the fence. You know, usually I'm taking a look at a 15-year conspiracy and trying to divide it up. Do you have any where plain error has been found on the number of conspiracies? My best case is a case that I cited to my brief. It's Corral v. United States. Now, that case is what I would argue is beyond plain error because it's a 2255 motion. So in that case, the court had to determine whether or not counsel was in effect or for failing to raise this issue, this very precise issue. And in that case, there was a Michigan conspiracy and then a California conspiracy. In the Michigan conspiracy, they were two separate conspiracies. And then the Michigan conspiracy talked about some stuff that happened in California. I see that my time is up if I can finish my thought on that. Finish the sentence. So in Corral, this court actually remanded for an evidentiary hearing on the issue of whether or not counsel was ineffective for failing to raise this issue pretrial. And my argument would be that that's beyond a plain error standard, and it certainly would fit the bill in this case. If you look at all of the Sinitto factors, we meet virtually every one of them that these are the same conspiracies. You're saying Corral, they remanded for further proceedings? An evidentiary hearing. For an evidentiary hearing. Has that been concluded yet? I did not look it up. Okay. Fine. Thank you, counsel. Thank you. Thank you. Good morning, Your Honors. May it please the court, William Abley on behalf of the United States. Your Honors, the issue here is whether any rational jury could have found, based on the evidence at trial, that there were three separate conspiracies. I mean, I was going to ask Mr. Shadd, and he can tell us if he disagrees, but you say this is a sufficiency issue, is the framework for our analysis of one versus three. That's right, Your Honor. And the question is to be considered on appeal in the light most favorable to the government, drawing all reasonable inferences, as Mr. Shadd acknowledged it is under a plain error review standard. And this is a little different than certain other cases. Obviously, it can be sometimes difficult to discern the contours of a criminal conspiracy. You had to prove, beyond a reasonable doubt, that it was three rather than one. That's correct. That is what the jury was instructed by the court, and that is what the jury found in its verdicts on these three separate conspiracies. And you heard the exchange earlier about the alternative ways to look at this, kind of an ongoing general agreement. Anytime we see an opportunity, we're going to do this, as opposed to not, and this is all state of mind, I guess, not an ongoing agreement, but sort of something comes up, yeah, let's do it. Nothing happens for a few weeks. Something comes up, yeah, sure, let's do that, too. You agree with that framework for that's the jury had to choose one of those two things? Is that fair? Well, I think it's fair to say that they did, in fact, choose and decide that beyond a reasonable doubt there was proof of three. They didn't have to choose the difference because it wasn't presented to them, but you had to show that there was this conspiracy and that this conspiracy existed, which must in some sense be different from the other conspiracies in order to prevail. If it was the same as this conspiracy, then you wouldn't have proven the second and third conspiracies. That's right. What the government proved at trial was the existence of three separate agreements, and that is really what the record bears out. Right. Tell us what evidence would allow the jury to find three rather than one. Certainly. So in this case, the jury heard from both Shannon Wilson and Mr. Lanier, the defendant, and the defense is now arguing that they had some sort of ongoing agreement. But Mr. Wilson testified at trial. Mr. Lanier, they heard a videotaped confession in which he admitted his role in all three of these armed robberies. Absent from both of those was any testimony or any indication that there was an ongoing agreement, that there was any point in time where they said any time an opportunity comes around, we're going to grab on it. Rather, what the evidence was is that these were, to use your word, Judge Kethledge, an ad hoc or opportunistic. Some of the language that was used by Mr. Wilson in terms of these conversations that launched these separate conspiracies, I got a lick. In other words, I have the opportunity for us to commit one armed robbery. I need a lick. At some point, Mr. Lanier spoke to Mr. Wilson. He said, I need money for rent, so do you know any robbery we can go do? He was looking for one. He had a motivation for a one single robbery. Whose testimony was that? Wilson? Yes, Your Honor. What page do you have? I got one is at transcript part V at page ID 1630. And then he talks about the time where Mr. Lanier says, I need a lick. I have rent due, and so I need to go out and commit a robbery. That's at the same transcript, the fifth part, at page ID 1637. So in both Mr. Wilson's testimony and the defendant's confession, there's no suggestion of an ongoing conspiracy. And there are some other factors that show that these were, in fact, distinct ad hoc conspiracies. For example, after the Lebanon and Hampton robberies, the two successful robberies, afterwards the co-conspirators got together, they split up the proceeds, they split up the drugs, and they went their separate ways. And that's indicative of this was a distinct siloed conspiracy. It was launched. It was committed. It concluded. Everybody got their money. Everybody got their drugs. They went their separate way. It was over. It's further established by the fact that certain individuals who participated in one of these robberies refused to participate in other robberies with Mr. Lanier. Troy McCauley took part in one of the robberies, but he testified that he refused to take part in the Briarwick robbery because it involved another individual who he knew to be a rat. He didn't want anything part to do with it. So it shows he was a conspirator in one of these. He refused to take part in one of these other conspiracies. Well, I need a lick almost seems to cut against your argument. I mean, that's not opportunistic really because it's not opportunity driven. It's sort of, hey, I mean, it's not, you know, I just saw 20 grand in this guy's basement. It's I need some money, and, you know, we said we were going to be doing these robberies. Let's do one. Well, see, there's nothing in the record along the second line, the latter part of what you just said. Rather, there's times at which these co-conspirators come together and decide to commit a robbery. And this is one of those occasions where the defendant here, Mr. Lanier, needs money, so he reaches out in a distinct occurrence to Mr. Wilson. Mr. Wilson offers up a robbery, and they go do it. The defendant in his confession himself distinguished one of the robberies, the Briarwick robbery. The defendant admitted in his confession that he participated in two of the robberies. The Briarwick, he said, that's different. I just introduced people in that one. And there was also testimony that the second individual charged in the Count Five conspiracy, Mr. Pitts, was going to get 50 percent of that for setting it up, which is distinct from the other ones. So the contours of these separate robberies and separate conspiracies is reflected in the evidence, and there was certainly a reasonable basis for the jury to decide that the evidence proved three separate conspiracies under the totality of the evidence. They were on different dates, the robberies, different locations. They were involving different conspirators. But I think really the salient factor is the complete absence of any evidence of an overarching or coherent scheme tying the three of these together. So why did you charge one conspiracy in the first charging document? The first charging document was specific by date and location to one of these robberies. And it was a complaint. So Mr. Lanier was arrested on a complaint. It specified September 2009, which is when the Lebanon Road robbery occurred. So that was as to one of these. Then there was an indictment that charged two, that charged Lebanon and Hampton. Again, making it clear from the face of the charging document these were two distinct conspiracies, and it was superseded to add the third. Again, in each instance reflected in the charging document that these are three separate conspiracies. Does that indicate that in some way you didn't know all the facts about the second and third one at the time of the original arrest? I thought that was going to be his answer. I do just want to point out that I was not involved at that time, so I don't precisely know the answer, but I do believe that to be the case. The one was considerably earlier in time. The one about, quote, in the summer sounds like they wouldn't have been on top of it. They didn't even have a date at the time, or they don't even have a date now. That's right, Your Honor. Two of these robberies were known to law enforcement on the day it happened. One, a SWAT team arrived, and one, there was a call to 911. The third robbery was never reported because it was a robbery of a drug house. They never reported it, and it didn't come to light until later when, in part, the defendant confessed to committing that robbery. Let me ask you, I think you sort of have a fallback argument that even if it was only one conspiracy, you could get three 924 counts, which is obviously what Mr. Shadd is most interested in. Even if we bought that argument, would that require a remand for resentencing in order to determine whether to do that? Well, Your Honor, I think when examining that, I think the issue, and one of Your Honors brought it up before, is that there was no objection below here. There was no motion to dismiss the indictment due to multiplicity. There was no chance below for the district court originally to assess this argument that it's one conspiracy. However, clearly the proof here established, clearly it established three separate conspiracies, but even if Your Honors reject that, it established three separate robberies. A 924C count could be based on any of those. They're separate predicate acts. To answer Your Honor's question, I do not know whether a remand would be necessary. You know, I will say, I mean, I understand your argument, but there really is something troubling about this case. I mean, you yourself, I think, said that the difference between this one and three is pretty nebulous, and there would seem to be no moral difference between one and three here in terms of moral culpability. And yet, at least according to Mr. Shadd, who generally knows what he's talking about on this sort of thing, the difference between one and three in this case is a 27-year sentence or a 70-something year sentence. And so I guess it just boils down to what the prosecution chooses to charge here, and then we get in this nebulous analysis where we pretty much defer to whatever the prosecution charged and the jury finds. I mean, is that—am I missing something here? Well, Your Honor, let me make two points in response to that. One is Mr. Shadd said that there's only one reason it was charged as three conspiracies, and that was to allow three different 924C counts. And I just wanted to point out you could leave conspiracy out of this altogether and still have three 924C counts. You could charge it as three distinct Hobbs Act robberies and still have those three 924C counts. So I don't think that plays into why charge it as three conspiracies. The second point, Your Honor, is that most of the time these issues of single versus multiple conspiracies are litigated is when you have multiple—when you have one conspiracy alleged and a defendant is before you arguing that they are multiple. And there the danger of prejudice is clear because you have guilt transference. And so— Okay, I understand your point there. Is there a reason that these were charged as conspiracies rather than the robberies themselves? I can't speak to that, Your Honor. I think the proof at trial clearly would have proved these three separate Hobbs Act robberies. The proof also proved that for each of those— He was present at two of them and organized the third. Is that pretty much the— So the defendant, in one of them, he was present in the house. In one, he was the getaway driver. And in the third, he organized it but was not present on the scene. But would have been, at least on the proof, would appear to have a decent chance to convict him of the robbery itself. Certainly, Your Honor. As an ignorant abettor, he provided the guns to be used at that robbery. He clearly played a role in setting it up. And so even if you take conspiracy out of it, the proof would have been sufficient to support a finding on a Hobbs Act robbery alone for all three of these separate instances. And the proof would have supported a 924C regardless of whether it was on it. Let's suppose they had made a motion to dismiss as multiplicitous and limited you to one on conspiracy. If the statute of limitations hadn't run, you could have come right back and charged him for the robbery on the other two. That's exactly right. And that's why it's a bit troubling for this argument to be first raised here when clearly the record would have supported it either way. And you can debate the merits of the underlying mandatory minimum schemes that lead to these sentences. But the evidence here would have supported that one way or another regardless had it been raised earlier. And if there are no further questions, I will see the remainder of my time. Thank you, Your Honor. Mr. Shad, you have three minutes for rebuttal. Thank you. I would concede that if these were Hobbs Act violations and not conspiracies, we'd have a much different argument here. I don't think we'd be up here making that argument. And I don't have any control of how they charge it, but they charged it as conspiracy, three conspiracies. Yeah, but, I mean, as you said, usually you're arguing for more conspiracies. If they had argued one, would we be hearing now about, oh, it should be three? But I can tell you that if this would have been a drug case and we would have had these people, this type of conduct, and this time frame, I don't think I would have briefed the issue that it was multiple conspiracies. I don't think I could pass the sniff test on something like that with this small a time frame and these people. Judge Black, to answer your question, if you look at page ID number five as to what they knew about how much they knew about the complaint actually relies on Mr. Lanier's confession. And under number four, it says, under Miranda, Lanier admitted his involvement in three home invasion-style drug-related robberies in the Nashville area. And then each paragraph successive goes on to say the three robberies that then become the three conspiracies down the line. So they knew that at the inception of the case. They had all three of them wrapped up at the inception of the case. So this isn't a situation where they found out more information later on in the case. Finally, let me say that this court's, and I cited to the Galen case, and I believe one other case in my reply brief, this court's precedent is that a conspiracy is ongoing until it's affirmatively terminated. And when you look at this case, not only do we have the three acts that become the three robberies that we're talking about today, but if you take a look at page 1658, between the second and third robberies, Mr. Wilson and Mr. Lanier talk about another robbery to do as well that doesn't end up happening. But it shows that it's an ongoing agreement. And again, it's not based upon I see $20,000, I'll give my buddy a call, and we'll have a robbery. It's I need money, we have this agreement, let's go find a lick. And that is the agreement. It's we have this agreement that when either of us sees this and we need the money, we're going to go get a lick. But I guess at the end of the day, I mean, the gist of your argument here is that the district court sua sponte should have recognized this was one rather than three and acted accordingly. Well, it's either that. I mean, I haven't alleged that the district court really erred in any way. But it was plain. It should have known better, right? Or that it's, you know, again, akin to your discussion of whether this is sufficiency or not. Could the evidence at trial have supported anything else than this is one conspiracy? And the answer is no. If you look at the Sineto factors, you can't get to any other point. When you say that you're not saying he should have done something different, but, you know, to make plain error, you've also got to affect the fairness and reputation of the court. And if the court doesn't recognize something like that, he certainly should have, shouldn't he? Yeah, and obviously the 50-year consecutive sentences get us to prejudice pretty quickly. Well, but the fairness is something different. Okay. Thank you, counsel. Case will be submitted. And the clerk may call the next case.